John J. Dillon, J.
The petitioner has instituted this proceeding under section 707 of the Labor Law to obtain an order enf arcing its own order of August 13,1963, against the respondent. The question is whether the purchaser of a restaurant business may be compelled to bargain collectively with a labor union which had been certified as the exclusive bargaining representative of the employees of the previous owner.
In 1961 a corporation known as La Cremailler, Inc. (the old corporation) operated a luxury-type French restaurant in Banksville, New York, known as “La Cremaillere.” On September 21, 1961, an election was held by its employees to determine whether the Hotel & Restaurant Employees and Bartenders Union, Local 178, should represent them in collective bargaining. A majority voted in favor of the union. On October 6, 1961, the New York State Labor Relations Board certified the union as the bargaining agent. The old corporation *496 in effect refused to bargain with the union. On November 28, 1961, it sold the physical assets of the business and leased the realty to certain purchasers who organized La Cremaillere Restaurant Oorp. (the new corporation). The old corporation closed the business on December 3, 1961, and discharged all its employees. The. new corporation took possession of the premises, made substantial renovations and on January 22, 1962, reopened the restaurant under the same name and with the same type of operation. Of the 21 former employees, 10 were rehired including the chef and headwaiter. The new corporation has refused to bargain with the union. In August, 1962, the board issued a complaint against both the old and new corporations charging unfair labor practices. Hearings were held before a trial examiner who filed his report on October 15, 1962. He recommended that the case be closed against the old corporation because it was out of business, and that the complaint be dismissed against the new corporation on the ground that the certification of the union made prior to the sale was not binding on the subsequent purchaser. The board disagreed with the trial examiner’s conclusions as to the new corporation. In a decision and order dated August 13, 1963, it held that the certification of the union as the bargaining agent could not be abrogated by a transfer of ownership even though the sale had been made in good faith. The board therefore ordered the new corporation to bargain collectively with the union, and has instituted this proceeding to enforce its order.
It is agreed on all sides that the sale to the new owners was a bona fide sale and not a subterfuge by the original owner to escape his obligation to the union by continuing the business under a different corporate form. This was expressly conceded before the trial examiner by the representatives of both the board and the union. There is no basis in the evidence for a finding that the new corporation is the alter ego of the old one. Nevertheless there is compelling authority for the proposition that a purchaser in good faith who continues the .same kind of business, with the same kind of employees doing the same kind of work, is bound to recognize the union certified to the old employer as the appropriate bargaining agent (National Labor Relations Bd. v. McFarland, 306 F. 2d 219; National Labor Relations Bd. v. Colton, 105 F. 2d 179). It was pointed out in the McFarland ease (p. 220) that “In deciding this question we necessarily deal in terms of succession of employment, and not succession of employers, i.e., in terms of the continued nature of the employment rather than the source of such employment.” The fact that the business was temporarily *497 closed during the transition period from one ownership to another does not alter the rule (National Labor Relations Bd. v. Auto Ventshade, 276 F. 2d 303). Nor is the validity of the certification destroyed by the fact that the union may no longer represent a majority of the employees (National Labor Relations Bd. v. Armato, 190 F. 2d 800). This does not mean, of course, that the new employer must continue indefinitely to deal with a union whose members comprise only a minority of the employees. Under the board’s regulations the certification is effective for only one year. It may be that, as was suggested in National Labor Relations Bd. v. Auto Ventshade, (supra) the employer may petition for a new election without waiting for the expiration of the one-year period. But this the court is not called upon to decide. All that is decided here is that the new employer is bound by the previous certification and that as of now it must recognize the prima facie union representation of the employees and deal with the union in accordance with the board’s order.
The court cannot agree with the respondent’s interpretation of Southport Co. v. Labor Bd. (315 U. S. 100). The court was dealing in that .case .only with the duty imposed upon the former employer to reinstate discharged employees. It was clearly implied that a bona fide purchaser would not be bound by such an order; but that is quite a different thing from relieving the purchaser of a duty created by the vote of the whole body of employees. The board has not held in this case, and the court is not saying, that a bona fide purchaser has a general duty to remedy all the unfair labor practices of a previous employer. The court is saying only that a successor who has purchased in good faith is required to bargain with a certified union if the “ employing industry” has not been so materially changed as to destroy the appropriateness of the bargaining agent. The latter statement indicates the distinction between this case and National Labor Relations Bd. v. Birdsall-Stoclcdale Motor Co. (208 F. 2d 234). In that case the transfer of ownership had been followed by substantial changes in the manner of doing business. The remaining case on which the respondent relies (National Labor Relations Bd. v. Lunder Shoe Corp., 211 F. 2d 284) seems in the main to support the board’s decision. The application is granted.